## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re                           )   Case No. _____

                               )

                               )   NOTICE OF MOTION FOR RELIEF

                               )   FROM (Check all that apply):

                               )       AUTOMATIC STAY IN A **CHAPTER 7/13** CASE

Debtor(s)                 )       CHAPTER **13** CODEBTOR STAY

I.   YOU ARE NOTIFIED that a Motion was filed by _____ , the moving party, for (Check all that apply):

     Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

     Relief from the stay protecting the codebtor, whose name and service address are: _____
_____ ,
and codebtor's property as provided by 11 USC §1301.

II.   A copy of the Motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are:_____
_____

III.   If you wish to resist the Motion, you must, within 14 days of the service date shown below, file the following with the Clerk of the U.S. Bankruptcy Court [NOTE: if you mail or have a courier deliver the Response to the Court for filing, you must mail it or initiate the delivery sufficiently before the deadline so that it will actually be received at the Court on time.]

     A.   A written response that states the facts supporting the opposition to the Motion by filling in the applicable "Response" portions on a copy of the original Motion. [NOTE: If the Response will be electronically filed, the Response must be prepared using the "fillable" pdf version of the original Motion unless the Motion was filed on paper and could not be electronically obtained from the movant];

<u>And</u>   B.   A fully completed Notice of Hearing using Local Form #721, including the date and time of the hearing.  Available hearing dates and times are posted on the Court's website at www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the Court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information from a Court clerk.

IV.   <u>Failure to Respond and Serve Proper Notice of Hearing</u>.  If you fail to file a timely response and a proper Notice of Hearing, then either:

     A.   The automatic stay will expire as to the debtor(s) pursuant to 11 USC §362(e) 30 days after the Motion was originally filed, and/or the stay protecting the codebtor will automatically expire pursuant to 11 USC §1301(d) 20 days after the date the Motion was originally filed;

<u>Or</u>   B.   The Court may sign an ex parte order, submitted by the moving party on Local Form #720.90, granting relief from the debtor stay and/or codebtor stay.

                                Clerk, U.S. Bankruptcy Court
                                [NOTE:  If the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; <u>OR</u> if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401.]

I certify that:  (1) The Motion was prepared using the Court's "fillable" PDF version of Local Form #720.80; and (2) that on _____ I served copies of this Notice and the Motion on the Debtor(s), any codebtor at the address listed above, Trustee, U.S. Trustee, members of any committee elected pursuant to 11 USC §705, and their respective attorneys.

_____
Signature of Moving Party or Attorney                      **(OSB#)**

In re
)   Case No._____
)
)   (CHECK ALL APPLICABLE BOXES)
)   ☐ Ch. 7/13 Motion for Relief from
)        ☐ DEBTOR ☐ Chapter **13** CODEBTOR Stay
)        Filed by Creditor:
)        _____
)
)   ☐ *Response to Stay Motion filed by Respondent:*
Debtor(s)
)        _____

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

   a. Description of collateral (car model, year, VIN, property address):

   b. Amount of debt:  $_____consisting of principal: $_____; interest: $_____; other:

   c. Description, amount and priority of other encumbrances on collateral.  If not known, include applicable information from debtor's schedules if available on PACER:

      Total debt secured by collateral (total 1.b. + 1.c.):  $_____.

   d. Value of collateral: $_____.
      Equity in collateral:  $_____, after deducting $_____liquidation costs.

   e. Current monthly payment:  $_____.

   f. If Chapter 13:

      (1) $_____postpetition default consisting of (e.g., $____payments, $____late charges, $____fees):

      (2) $_____prepetition default consisting of  ☐ amounts specified in proof of claim, or, ☐ consisting of:

   g. If Chapter 7, total amount of default $_____.

***RESPONSE** (Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

*2.* **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*

- ☐ Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.
- ☐ Lack of insurance on collateral.
- ☐ No equity in the collateral and the property is not necessary for an effective reorganization.
- ☐ Failure of debtor to make Chapter 13 plan payments to the trustee.
- ☐ Failure of debtor to make direct payments to secured creditor as required by Chapter 13 plan.
- ☐ Other (describe):

**RESPONSE** *(Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) 720.90 available at www.orb.uscourts.gov under Forms/Local Forms) (to be completed by respondent):*

*3.* **Background** *(To be completed by creditor)*

    a. Date petition filed:_____Current Chapter:_____(7 or 13)

       If 13, current plan date_____Confirmed: ☐ Yes ☐No

       If 13, treatment of creditor's prepetition claim(s) in plan:

       If 7, debtor ☐ has☐ has not stated on Local Form (LBF) 521 or 521.05 that debtor intends to surrender the collateral.

    b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see ¶6 below):

- ☐ Security agreement, trust deed or land sale contract dated_____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on_____.
- ☐ Retail installment contract dated_____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected on the certificate of title on_____.
- ☐ Other (describe):

**RESPONSE** *(Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

*4.* **Request for Relief from Codebtor Stay** (Only Chapter **13**)

    a. _____, whose address is _____
    _____ is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

    b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes): ☐ codebtor received the consideration for the claim held by creditor, ☐ debtor's plan does not propose to pay creditor's claim in full, ☐ creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or ☐ because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5.   **Other Pertinent Information** *(To be completed by creditor, if applicable):*

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

6.   **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

☐ Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

☐ Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete ¶5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

☐ Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

☐ Other (describe and explain cause):

*RESPONSE (Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Form (LBF) 720.90 available at www.orb.uscourts.gov under Forms/Local Forms) (to be completed by respondent):*

**7. Documents:**

**If creditor claims to be secured in ¶3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a Chapter 13 case and the collateral as to which creditor seeks stay relief is real property**, creditor has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how creditor applied the payment.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

☐ Postpetition payment history if not required above.
☐ Documents establishing that creditor owns the debt described in ¶1 or is otherwise a proper party to bring this motion.
☐ Other document(s) (specific description):

CREDITOR/ATTORNEY

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **DEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **CODEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

*YOU ARE HEREBY NOTIFIED THAT THE CREDITOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

# EXHIBIT 1

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

STATE OF OREGON

MARCH 25, 2003

PROPERTY ADDRESS

FHA Case Number: ▓▓▓▓▓
LOAN NO: ▓▓▓▓

    390 B STREET
    CRESWELL, OREGON 97426
    LANE COUNTY

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means Seattle Mortgage Company and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated MARCH 25, 2003 ("Loan Agreement"), up to a maximum principal amount of U.S. $183,000.00, Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on DECEMBER 2, 2084. Interest will be charged on unpaid principal at the rate of TWO AND EIGHTY-TWO HUNDREDTHS percent (2.820%) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. At the end of each month, accrued interest shall be added to and made part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

### (B) Place
Payment shall be made at 190 Queen Anne Avenue North, Suite 500, Seattle, Washington 98109 or any such other place as Lender may designate in writing by notice to Borrower.

### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of assignment.

## 5. INTEREST RATE CHANGES

### (A) Change Date
The interest rate may change on the first day of JUNE, 2003 and on that day of each succeeding month. Change Date means each date on which the interest rate could change.

### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of one and fifty hundredths percentage points (1.50%) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate will never increase above TWELVE AND EIGHTY-TWO HUNDREDTHS PERCENT (12.82%).

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that porion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be created to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

    (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

    (i)    The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of a least one other Borrower;

    (ii)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii)    An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

**(A) Second Note**
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**
Payments made by the Secretary shall not be included in the debt due under this Note unless:

    (i)    This Note is assigned to the Secretary; or

    (ii)    The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**
Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)    Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Sherry Weeks_                                                             3/25/03
SHERRY WEEKS (Borrower)                                                              Date

PAY TO THE ORDER OF
SEATTLE SAVINGS BANK
WITHOUT RECOURSE

SEATTLE MORTGAGE COMPANY

By: _____
Sheryl A. Carlson, Asst. Vice Pres.

By: _____
Mary L. Arney, Assistant Secretary

PAY TO THE ORDER OF

WITHOUT RECOURSE

SEATTLE SAVINGS BANK

By: _____
Sheryl A. Carlson, Vice President

By: _____
Mary L. Arney, Assistant Secretary

# EXHIBIT 2

After Recording Return To:
Western Title & Escrow Company.
497 Oakway Rd Suite 340
Eugene, OR 97401

**Recording Requested by:**
Seattle Mortgage Company

**When recorded mail to:**
Seattle Mortgage Company
1800 112th Avenue, NE, Suite 300
Bellevue, Washington 98004

**FHA Case Number:** ▇▇▇▇▇▇

# DEED OF TRUST
## (HOME EQUITY CONVERSION)

Division of Chief Deputy Clerk
Lane County Deeds and Records

**2003-027603**

$66.00

03/31/2003 09:58:18 AM

RPR-DTR  Cnt=1  Stn=4  CASHIER 02
$45.00  $10.00  $11.00

---

State of Oregon

## ADJUSTABLE RATE
## LINE OF CREDIT DEED OF TRUST

LOAN NO: ▇▇▇▇▇

THIS DEED OF TRUST ("Security Instrument") is made on MARCH 25, 2003. The Grantor is SHERRY WEEKS whose address is 390 B STREET, CRESWELL, OREGON 97426 ("Borrower"). The trustee is WESTERN TITLE AND ESCROW COMPANY, ("Trustee"). The beneficiary is Seattle Mortgage Company, which is organized and existing under the laws of Washington, and whose address is 190 Queen Anne Avenue North, Suite 500, Seattle, Washington 98109 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of $183,000.00; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on DECEMBER 2, 2084. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in LANE County, Oregon:

The real property located at the address 390 B STREET, CRESWELL, in the county of LANE, state of OREGON, described more fully on Exhibit A attached to this Deed of Trust.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.
**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender,

-1-

unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the Loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**
    **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
        (i)   A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii)  All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred an no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
        (i)   The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii)  For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

    **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in subparagraphs (a) and (b) of this Paragraph 9(a)(ii) or (b) occur.

    **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under this Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
        (i)   Correct the matter which resulted in the Security Instrument coming due and payable; or

        (ii)  Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgements.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgement against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. First Lien Status**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i)    This Security Instrument is assigned to the Secretary; or

    (ii)   The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)    Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii)   Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:
**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's Notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.
**20. Foreclosure Procedure.** Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

For any event of acceleration under Paragraph 9, in addition to any other remedy provided by law, Lender may invoke the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to other persons prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If lender invokes the power of sale, lender shall give notice of sale to Borrower in the manner provided in Paragraph 16. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including but not limited to reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of TWO AND EIGHTY-TWO HUNDREDTHS percent (2.820%) which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, ("Index") plus a margin. The Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15 (519). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. The new index will have a historical movement substantially similar to the original index, and the new index and margin will result in an annual percentage rate that is substantially similar to the rate in effect at the time the original index becomes unavailable.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on JUNE 1, 2003, and on the first day of _____ and on that day of each succeeding year, or ___X___ the first day of each succeeding month (Change Date) until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate).

_____ Annually Adjusting Variable Rate Feature.

__X__ Monthly Adjusting Variable Rate Feature - The Calculated Interest Rate will never increase above TWELVE AND EIGHTY-TWO HUNDREDTHS PERCENT (12.82%).

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon trustee herein and by applicable law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**26. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check all riders that are applicable].

__ Condominium Rider                    _ Planned Unit Development Rider

__ Shared Appreciation Rider            _ Other(s) -

## WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date your failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

Signature _____*Sherry Weeks*_____

SHERRY WEEKS (Borrower)

**STATE OF OREGON**                County of _____LANE_____

This instrument was acknowledged before me on <u>MARCH 25, 2003</u> by <u>SHERRY WEEKS</u> (name(s) or person(s)), personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

Place of Residence _____FLORENCE OR_____

Title and Rank _____NOTARY_____

My commission expires _____11-8-2006_____

OFFICIAL SEAL
TERESA J LEWIS
NOTARY PUBLIC - OREGON
COMMISSION NO. 362556
MY COMMISSION EXPIRES NOV. 8, 2006

-8-

# EXHIBIT 3

Document Prepared By:
**Ron Meharg, 888-362-9638**
When Recorded Return To:
**DOCX**
**1111 Alderman Drive**
**Suite 350**
**Alpharetta, GA 30005**

| STLMG | ███ | ███ |

CRef#:07/29/2007-PRef#:█████
Date:06/29/2007-Print Batch ID:███
Property Address:
**390 B Street**
**Creswell, OR 97426**
ORaosi-eR2.0  02/11/2006      2006(c) by DOCX LLC

Division of Chief Deputy Clerk
Lane County Deeds and Records

**2007-058630**

$26.00

08/21/2007 10:17:38 AM
RPR-ASN  Cnt=1  Stn=9  CASHIER 04
$5.00 $10.00 $11.00

This Space for Recorder's Use Only

## ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which is hereby acknowledged, **Seattle Mortgage Company**, whose address is **190 Queen Anne Ave. North, Suite 100, Seattle, WA 98109**, does by these presents hereby grant, bargain, sell, assign, transfer, convey, set over and deliver unto **Bank of America, N.A.**, whose address is **190 Queen Anne Ave. North, Suite 400, Seattle, WA 98109**, the following described deed of trust, securing the payment of a certain promissory note(s) for the sum listed below, together with all rights therein and thereto, all liens created or secured thereby, all obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such deed of trust.

Original Borrower(s): **SHERRY WEEKS**

Original Beneficiary: **SEATTLE MORTGAGE COMPANY**

Date of Deed of Trust: **03/25/2003**          Loan Amount: **$183,000.00**

Recording Date: **03/31/2003**    Document #: **2003-027603**

Legal Description:

and recorded in the official records of the **County of Lane**, State of **Oregon** affecting Real Property and more particularly described on said Deed of Truste referred to herein.

**IN WITNESS WHEREOF**, the undersigned has caused these presents to be executed on this date of **08/02/2007**.

**Seattle Mortgage Company**

Linda Green
Vice President

Jessica Ohde
Vice President

State of **GA**
County of **Fulton**

On this date of **08/02/2007**, before me, the undersigned authority, a Notary Public duly commissioned, qualified and acting within and for the aforementioned State and County, personally appeared the within named **Linda Green** and **Jessica Ohde**, known to me (or identified to me on the basis of satisfactory evidence) that they are the **Vice President** and **Vice President** respectively of **Seattle Mortgage Company**, and were duly authorized in their respective capacities to execute the foregoing instrument for and in the name and in behalf of said corporation and that said corporation executed the same, and further stated and acknowledged that they had so signed, executed and delivered said instrument for the consideration, uses and purposes therein mentioned and set forth.

Witness my hand and official seal on the date hereinabove set forth.

Notary Public:

**Brittany Snow**
**NOTARY PUBLIC**
**Fulton County**
**State of Georgia**
**My Commission Expires**
**May 21, 2011**

Recording Requested By:
**Bank of America**
Prepared By: **Diana De Avila**
800-444-4302
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID# ███████
Tax ID: ███████
Property Address:
**390 B St**
**Creswell, OR 97426-9655**
OR0-ADT ██████ E 11/19/2012

Lane County Clerk
Lane County Deeds & Records

**2012-059833**
11/21/2012 10:41:54 AM

RPR-ASN      Cnt=1 Stn=6 CASHIER 01
$5.00 $11.00 $10.00 $16.00                $42.00

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **800 5TH AVENUE, SEATTLE, WASHINGTON 98104-3176** does hereby grant, sell, assign, transfer and convey unto **CHAMPION MORTGAGE COMPANY** whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:         **SEATTLE MORTGAGE COMPANY**
Original Borrower(s):    **SHERRY WEEKS**
Original Trustee:        **WESTERN TITLE AND ESCROW COMPANY**
Date of Deed of Trust: 3/25/2003      Original Loan Amount: **$183,000.00**
Recorded in Lane County,OR on: 3/31/2003, book **N/A**, page **N/A** and instrument number **2003-027603**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
**NOV 2 0 2012**

**BANK OF AMERICA, N.A.**

By: *Mary Ann Hierman*
    **Mary Ann Hierman**
    **Assistant Vice President**

State of **California**
County of **Ventura**
On **NOV 2 0 2012** before me, ___ Daisy Chavez ___, Notary Public, personally appeared
**Mary Ann Hierman**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

*Daisy Chavez*
Notary Public: _____     (Seal)
My Commission Expires: ___ Daisy Chavez ___
                          June 5, 2015

DAISY CHAVEZ
Commission # 1939846
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2015

# EXHIBIT 4



# LANE COUNTY
Home

**Individual Property Account Information**

Printer Friendly Version

## Account Information

| | |
|---|---|
| **Account Number** | |
| **Additional Account Numbers** | |
| **Tax Payer** | WEEKS SHERRY R |
| **Owner(s)** | View Owners |
| **Situs Address** | 390 B ST<br>CRESWELL, OREGON 97426 |
| **Mailing Address** | PO BOX 404 |
| | CRESWELL, OREGON 97426 |
| **Map and Tax Lot #** | |
| **Acreage** | |
| **TCA** | 04000 |
| **Prop Class** | 109  Residential Improved Manufactured Structure |

## Recent Receipts

| Date | Amount Received | Tax | Discount | Interest |
|---|---|---|---|---|
| 11/10/2017 | $1,269.87 | $1,269.87 | $39.27 | $0.00 |
| 11/10/2016 | $1,300.58 | $1,300.58 | $40.22 | $0.00 |
| 11/16/2015 | $1,253.63 | $1,253.63 | $38.77 | $0.00 |
| 11/17/2014 | $1,233.28 | $1,233.28 | $38.14 | $0.00 |
| 11/15/2013 | $1,187.32 | $1,187.32 | $36.72 | $0.00 |

## Valuation History

More information on the values below can be found here

| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Assessed Value | $65,278 | $67,236 | $69,253 | $71,331 | $73,471 | $75,675 | $77,945 | $80,283 | $82,691 | $85,172 | $87,72 |
| Maximum Assessed Value | $65,278 | $67,236 | $69,253 | $71,331 | $73,471 | $75,675 | $77,945 | $80,283 | $82,691 | $85,172 | $87,72 |
| Real Market Value | $103,510 | $105,310 | $108,600 | $88,060 | $84,910 | $83,040 | $81,980 | $86,022 | $95,685 | $98,775 | $120,36 |



Provided by Lane County

# EXHIBIT 5

| Date | Rate | Description | | Amount | | Balance 1 | | Balance 2 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016-05-03 | 2.14 | Bankruptcy | $ | - | $ | 134,451.98 | $ | 130,216.05 | $ | - | $ | - | 0.00 | -7649.02 |
| 2016-05-09 | 2.14 | Repayment to Line of Credit | $ | (632.48) | $ | 133,819.50 | $ | 130,216.05 | $ | (0.82) | $ | (0.19) | 0.00 | -7016.54 |
| 2016-05-16 | 2.14 | Payment for Property Inspection | $ | 20.00 | $ | 133,839.50 | $ | 130,216.05 | $ | 0.02 | $ | - | 0.00 | -7036.54 |
| 2016-05-18 | 2.14 | Payment for Attorney Fees/Costs | $ | 82.00 | $ | 133,921.50 | $ | 130,216.05 | $ | 0.06 | $ | 0.01 | 0.00 | -7118.54 |
| 2016-05-18 | 2.14 | Payment for Attorney Fees/Costs | $ | 152.00 | $ | 134,073.50 | $ | 130,216.05 | $ | 0.12 | $ | 0.03 | 0.00 | -7270.54 |
| 2016-05-18 | 2.14 | Payment for Attorney Fees/Costs | $ | 52.00 | $ | 134,125.50 | $ | 130,216.05 | $ | 0.04 | $ | 0.01 | 0.00 | -7322.54 |
| 2016-05-18 | 2.14 | Payment for Attorney Fees/Costs | $ | 750.00 | $ | 134,875.50 | $ | 130,216.05 | $ | 0.57 | $ | 0.13 | 0.00 | -8072.54 |
| 2016-05-31 | 2.14 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 320.77 | $ | 135,196.27 | $ | 130,502.53 | $ | 239.77 | $ | 56.02 | 25.00 | -8098.68 |
| 2016-06-01 | 2.08 | Interest Rate Change | $ | - | $ | 135,196.27 | $ | 130,502.53 | $ | - | $ | - | 0.00 | -8098.68 |
| 2016-06-30 | 2.08 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 315.67 | $ | 135,511.94 | $ | 130,783.11 | $ | 234.34 | $ | 56.33 | 25.00 | -8125.59 |
| 2016-07-01 | 2.18 | Interest Rate Change | $ | - | $ | 135,511.94 | $ | 130,783.11 | $ | - | $ | - | 0.00 | -8125.59 |
| 2016-07-25 | 2.18 | Payment for Attorney Fees/Costs | $ | 350.00 | $ | 135,861.94 | $ | 130,783.11 | $ | 0.13 | $ | 0.03 | 0.00 | -8475.59 |
| 2016-07-31 | 2.18 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 327.80 | $ | 136,189.74 | $ | 131,075.19 | $ | 246.18 | $ | 56.46 | 25.00 | -8503.08 |
| 2016-08-01 | 2.05 | Interest Rate Change | $ | - | $ | 136,189.74 | $ | 131,075.19 | $ | - | $ | - | 0.00 | -8503.08 |
| 2016-08-24 | 2.05 | Payment for Attorney Fees/Costs | $ | 75.00 | $ | 136,264.74 | $ | 131,075.19 | $ | 0.03 | $ | 0.01 | 0.00 | -8578.08 |
| 2016-08-31 | 2.05 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 314.44 | $ | 136,579.18 | $ | 131,353.72 | $ | 232.66 | $ | 56.74 | 25.00 | -8605.73 |
| 2016-09-01 | 2.03 | Interest Rate Change | $ | - | $ | 136,579.18 | $ | 131,353.72 | $ | - | $ | - | 0.00 | -8605.73 |
| 2016-09-16 | 2.03 | Interest Rate Change | $ | 2.72 | $ | 136,581.90 | $ | 131,353.72 | $ | - | $ | - | 0.00 | -8608.45 |
| 2016-09-16 | 2.03 | Payment for Attorney Fees/Costs | $ | 300.00 | $ | 136,881.90 | $ | 131,353.72 | $ | 0.23 | $ | 0.06 | 0.00 | -8908.45 |
| 2016-09-30 | 2.03 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 313.24 | $ | 137,195.14 | $ | 131,630.66 | $ | 231.04 | $ | 56.91 | 25.00 | -8936.44 |
| 2016-10-01 | 2.09 | Interest Rate Change | $ | - | $ | 137,195.14 | $ | 131,630.66 | $ | - | $ | - | 0.00 | -8936.44 |
| 2016-10-03 | 2.09 | Payment for Attorney Fees/Costs | $ | 250.00 | $ | 137,445.14 | $ | 131,630.66 | $ | 0.40 | $ | 0.10 | 0.00 | -9186.44 |
| 2016-10-31 | 2.09 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 321.61 | $ | 137,766.75 | $ | 131,914.76 | $ | 238.94 | $ | 57.17 | 25.00 | -9215.60 |
| 2016-11-01 | 2.10 | Interest Rate Change | $ | - | $ | 137,766.75 | $ | 131,914.76 | $ | - | $ | - | 0.00 | -9215.60 |
| 2016-11-30 | 2.10 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 323.49 | $ | 138,090.24 | $ | 132,200.58 | $ | 241.09 | $ | 57.40 | 25.00 | -9244.88 |
| 2016-12-01 | 2.17 | Interest Rate Change | $ | - | $ | 138,090.24 | $ | 132,200.58 | $ | - | $ | - | 0.00 | -9244.88 |
| 2016-12-02 | 2.17 | Repayment to Line of Credit | $ | (197.00) | $ | 137,893.24 | $ | 132,200.58 | $ | (0.34) | $ | (0.08) | 0.00 | -9047.88 |
| 2016-12-12 | 2.17 | Payment for Attorney Fees/Costs | $ | 0.92 | $ | 137,894.16 | $ | 132,200.58 | $ | - | $ | - | 0.00 | -9048.80 |
| 2016-12-31 | 2.17 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 331.84 | $ | 138,226.00 | $ | 132,494.73 | $ | 249.72 | $ | 57.54 | 25.00 | -9078.06 |
| 2017-01-01 | 2.29 | Interest Rate Change | $ | - | $ | 138,226.00 | $ | 132,494.73 | $ | - | $ | - | 0.00 | -9078.06 |
| 2017-01-01 | 2.17 | Adjustment of Balance to Match Investor | $ | - | $ | 138,226.00 | $ | 132,494.73 | $ | - | $ | - | 0.00 | -9078.06 |
| 2017-01-31 | 2.29 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 346.38 | $ | 138,572.38 | $ | 132,802.78 | $ | 263.79 | $ | 57.59 | 25.00 | -9107.91 |
| 2017-02-01 | 2.38 | Interest Rate Change | $ | - | $ | 138,572.38 | $ | 132,802.78 | $ | - | $ | - | 0.00 | -9107.91 |
| 2017-02-22 | 2.38 | Reversed: Payment for Property Inspection | $ | (20.00) | $ | 138,552.38 | $ | 132,802.78 | $ | - | $ | - | 0.00 | -9087.91 |
| 2017-02-22 | 2.38 | Adjustment of Balance for Reversal | $ | (1.24) | $ | 138,551.14 | $ | 132,802.78 | $ | (0.96) | $ | (0.28) | 0.00 | -9087.91 |
| 2017-02-28 | 2.38 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 356.34 | $ | 138,907.48 | $ | 133,121.51 | $ | 274.84 | $ | 57.74 | 25.00 | -9117.01 |
| 2017-03-01 | 2.31 | Interest Rate Change | $ | - | $ | 138,908.72 | $ | 133,121.51 | $ | - | $ | - | 0.00 | -9117.01 |
| 2017-03-31 | 2.31 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 350.28 | $ | 139,259.00 | $ | 133,433.24 | $ | 267.40 | $ | 57.88 | 25.00 | -9147.00 |
| 2017-04-01 | 2.32 | Interest Rate Change | $ | - | $ | 139,259.00 | $ | 133,433.24 | $ | - | $ | - | 0.00 | -9147.00 |
| 2017-04-30 | 2.32 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 352.26 | $ | 139,611.26 | $ | 133,746.81 | $ | 269.24 | $ | 58.02 | 25.00 | -9177.00 |
| 2017-05-01 | 2.50 | Interest Rate Change | $ | - | $ | 139,611.26 | $ | 133,746.81 | $ | - | $ | - | 0.00 | -9177.09 |
| 2017-05-15 | 2.50 | Repayment to Line of Credit | $ | (500.00) | $ | 139,111.26 | $ | 133,746.81 | $ | (0.55) | $ | (0.11) | 0.00 | -8677.09 |
| 2017-05-31 | 2.50 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 373.37 | $ | 139,484.63 | $ | 134,081.18 | $ | 290.86 | $ | 58.17 | 25.00 | -8707.44 |
| 2017-06-01 | 2.56 | Interest Rate Change | $ | - | $ | 139,484.63 | $ | 134,081.18 | $ | - | $ | - | 0.00 | -8707.44 |
| 2017-06-30 | 2.56 | Month End - Monthly Finance Charges + Monthly Servicing Fee | $ | 380.69 | $ | 139,865.32 | $ | 134,423.09 | $ | 297.57 | $ | 58.12 | 25.00 | -8737.54 |
| 2017-07-01 | 2.65 | Interest Rate Change | $ | - | $ | 139,865.32 | $ | 134,423.09 | $ | - | $ | - | 0.00 | -8737.54 |
| 2017-07-18 | 2.65 | INC_NET_LOC_PREPMNT | $ | (45.00) | $ | 139,820.32 | $ | 137,042.42 | $ | - | $ | - | 0.00 | -9590.19 |
| 2017-07-31 | 2.65 | Mortgage Insurance Charge | $ | 58.27 | $ | 140,212.42 | $ | 137,042.42 | $ | - | $ | 58.27 | 0.00 | -9590.19 |
| 2017-07-31 | 2.65 | Interest Charge | $ | 308.83 | $ | 140,212.42 | $ | 137,042.42 | $ | 308.83 | $ | - | 0.00 | -9590.19 |
| 2017-07-31 | 2.65 | Servicing Fee Charge | $ | 25.00 | $ | 140,212.42 | $ | 137,042.42 | $ | - | $ | - | 25.00 | -9590.19 |
| 2017-08-21 | 2.72 | INC_NET_LOC_PREPMNT | $ | (45.00) | $ | 140,167.42 | $ | 137,042.42 | $ | - | $ | - | 0.00 | -9590.19 |
| 2017-08-31 | 2.72 | Interest Charge | $ | 317.78 | $ | 140,530.20 | $ | 137,042.42 | $ | 317.78 | $ | - | 0.00 | -9590.19 |
| 2017-08-31 | 2.72 | Mortgage Insurance Charge | $ | 58.41 | $ | 140,588.61 | $ | 137,042.42 | $ | - | $ | 58.41 | 0.00 | -9590.19 |
| 2017-08-31 | 2.72 | Servicing Fee Charge | $ | 25.00 | $ | 140,613.61 | $ | 137,042.42 | $ | - | $ | - | 25.00 | -9590.19 |
| 2017-09-18 | 2.73 | INC_NET_LOC_PREPMNT | $ | (45.00) | $ | 140,523.61 | $ | 137,042.42 | $ | - | $ | - | 0.00 | -9590.19 |
| 2017-09-22 | 2.73 | FORCE_INS_PMNT | $ | 760.00 | $ | 141,056.61 | $ | 137,042.42 | $ | - | $ | - | 0.00 | -9590.19 |
| 2017-09-30 | 2.73 | Interest Charge | $ | 320.20 | $ | 140,888.81 | $ | 137,042.42 | $ | 320.20 | $ | - | 0.00 | -9590.19 |
| 2017-09-30 | 2.73 | Mortgage Insurance Charge | $ | 58.64 | $ | 140,947.45 | $ | 137,042.42 | $ | - | $ | 58.64 | 0.00 | -9590.19 |
| 2017-09-30 | 2.73 | Servicing Fee Charge | $ | 25.00 | $ | 140,972.45 | $ | 137,042.42 | $ | - | $ | - | 25.00 | -9590.19 |
| 2017-10-31 | 2.73 | Interest Charge | $ | 322.34 | $ | 142,009.79 | $ | 137,042.42 | $ | 322.34 | $ | - | 0.00 | -9590.19 |
| 2017-10-31 | 2.73 | Mortgage Insurance Charge | $ | 59.04 | $ | 142,068.83 | $ | 137,042.42 | $ | - | $ | 59.04 | 0.00 | -9590.19 |

| Date | Rate | Description | | Amount | | Balance | | Principal | | | Interest | | MI | Fee | Net |
|------|------|-------------|---|--------|---|---------|---|-----------|---|---|--------|---|------|-----|-----|
| 2017-10-31 | 2.73 | Servicing Fee Charge | $ | 25.00 | $ | 142,093.83 | $ 137,042.42 | $ | - | $ | - | | 25.00 | -9590.19 |
| 2017-11-30 | 2.81 | Interest Charge | $ | 332.74 | $ | 142,426.57 | $ 137,042.42 | $ | 332.74 | $ | - | | 0.00 | -9590.19 |
| 2017-11-30 | 2.81 | Mortgage Insurance Charge | $ | 59.21 | $ | 142,485.78 | $ 137,042.42 | $ | - | $ | 59.21 | | 0.00 | -9590.19 |
| 2017-11-30 | 2.81 | Servicing Fee Charge | $ | 25.00 | $ | 142,510.78 | $ 137,042.42 | $ | - | $ | - | | 25.00 | -9590.19 |
| 2017-12-31 | 3.12 | Interest Charge | $ | 347.96 | $ | 142,858.74 | $ 137,042.42 | $ | 347.96 | $ | - | | 0.00 | -9590.19 |
| 2017-12-31 | 3.12 | Mortgage Insurance Charge | $ | 59.38 | $ | 142,918.12 | $ 137,042.42 | $ | - | $ | 59.38 | | 0.00 | -9590.19 |
| 2017-12-31 | 3.12 | Servicing Fee Charge | $ | 25.00 | $ | 142,943.12 | $ 137,042.42 | $ | - | $ | - | | 25.00 | -9590.19 |
| 2018-01-31 | 3.12 | Interest Charge | $ | 371.65 | $ | 143,314.77 | $ 137,042.42 | $ | 371.65 | $ | - | | 0.00 | -9590.19 |
| 2018-01-31 | 3.12 | Mortgage Insurance Charge | $ | 59.56 | $ | 143,374.33 | $ 137,042.42 | $ | - | $ | 59.56 | | 0.00 | -9590.19 |
| 2018-01-31 | 3.12 | Servicing Fee Charge | $ | 25.00 | $ | 143,399.33 | $ 137,042.42 | $ | - | $ | - | | 25.00 | -9590.19 |